IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Miscellaneous Case No. 18-mc-00178-PAB

STANDING AKIMBO, INC., a Colorado Corporation,
SPENCER KIRSON,
SAMANTHA MURPHY, and
JOHN MURPHY,

    Petitioners,

v.

UNITED STATES OF AMERICA, through its agency the INTERNAL REVENUE SERVICE,

    Respondent.

_____

# ORDER
_____

This matter is before the Court on petitioners' Amended Petition to Quash Summonses [Docket No. 6] and the United States' Motion to Dismiss Amended Petition and Enforce Summonses [Docket No. 12].

**I. BACKGROUND**

The Internal Revenue Service ("IRS") is conducting a civil audit of petitioner Standing Akimbo Inc.[1] and its owners, petitioners Spencer Kirson, Samantha Murphy, and John Murphy (the "owners"), for the 2016 tax year. Docket No. 12-1 at 2, ¶ 4. Through petitioner Standing Akimbo Inc., the owners operate a marijuana dispensary. *Id*. at 2, ¶ 5. In connection with the audit, Tyler Pringle, an IRS revenue agent,

---

[1] Standing Akimbo LLC changed its Employer Identification Number ("EIN") and became Standing Akimbo Inc. for the 2016 tax year. *See* Docket No. 12-1 at 2 n.1. When referring to both entities, the Court will use "Standing Akimbo."

requested documents from both Standing Akimbo and the owners. *Id*. at 3, ¶¶ 8-9. In response to Revenue Agent Pringle's requests, petitioners provided only partial responses. *Id.*, ¶ 9. The IRS maintains that without further information it cannot verify Standing Akimbo's accounting records, reconstruct Standing Akimbo's income, or otherwise confirm the accuracy of the tax returns at issue. Docket No. 12 at 4. Standing Akimbo also refused to produce information it provided to Colorado's Marijuana Enforcement Division ("MED") through the Marijuana Enforcement Tracking Reporting and Compliance ("METRC") system. Docket No. 12-1 at 4, ¶ 11. Colorado law requires marijuana businesses to report business, accounting, and financial information to MED, and part of this requires marijuana businesses to account for their inventory using METRC. Docket No. 12 at 4.

      The IRS states that this information from METRC is useful in an audit because it "can establish whether a marijuana business properly reported its gross receipts and allowed deductions for costs of goods sold." *Id.* Revenue Agent Pringle issued a summons to the MED seeking "METRC annual gross sales reports, transfer reports, annual harvest reports, and monthly plants inventory reports." Docket No. 12-1 at 4, ¶ 14. Revenue Agent Pringle also issued summonses to the owners for "all licenses held from January 1, 2016, to December 31, 2016." *Id*. at 5, ¶ 22. Revenue Agent Pringle stated that he "sought this information to verify that these individuals own Standing Akimbo and to determine whether they own any other similar entity that could affect their tax liabilities." *Id.* at 6, ¶ 22. Petitioners now seek to quash the summonses on MED, Docket No. 6 at 2, and the government seeks to enforce them. Docket No. 12. MED has not produced information in response to the summonses. Docket No. 12-

1 at 5-6, ¶¶ 17, 25.

## II. DISCUSSION

In order to enforce a summons, the IRS must show that the

> investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed—in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

*United States v. Powell*, 379 U.S. 48, 57-58 (1964).[2]  "The requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement."  *Id*. (internal quotation marks omitted).  The IRS's burden "is a slight one because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted."  *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985) (citation omitted).

If the IRS makes the prima facie showing required under *Powell*, the burden shifts to the party resisting enforcement, whose "burden is a heavy one."[3]  *Id*. at 1444

---

[2] The IRS is barred from issuing or enforcing summonses under the Internal Revenue Code "with respect to any person if a Justice Department referral is in effect with respect to such person."  26 U.S.C. § 7602(d)(1) (I.R.C. § 7602(d)(1)).  Petitioners do not dispute Revenue Agent Pringle's statement that there is no Justice Department referral in effect in relation to them.  *See* Docket No. 12-1 at 5-6, ¶¶ 21, 29; *see generally* Docket No. 17.

[3] In *Speidell v. United States*, 978 F.3d 731 (10th Cir. 2020), the Tenth Circuit confronted whether the "slight" and "heavy" burdens of *Balanced Fin. Mgmt.* comport with the summary judgment standard.  978 F.3d at 738.  The court concluded that it need not resolve this issue because the taxpayers failed to raise a genuine dispute of material fact under the traditional summary judgment standards.  *Id.*  Therefore, the Court analyzes this case under the *Powell* framework, but applies the traditional summary judgment standards.

3

(citing *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 68 (3d Cir. 1979)). The party resisting enforcement must establish a defense, show a lack of good faith on the part of the IRS, or "prove that enforcement would constitute an abuse of the court's process." *Id*. (internal quotation marks omitted).

Because review of the IRS's motion to dismiss requires the Court to consider a declaration outside of the pleadings, the Court must treat the motion as one for summary judgment under Fed. R. Civ. P. 56. *Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1155 (10th Cir. 2020) ("Because we are considering Agent Pringle's declaration, the IRS's motion to dismiss must be treated as one for summary judgment under Rule 56." (internal quotations omitted)). Under this standard, the Court will "view the record in the light most favorable to [the petitioners] and ask whether the IRS has shown that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Id.* at 1156 (citations omitted). Substantive law determines whether facts are material in a case, so the criteria of *Powell* are "of central importance" in determining whether there are genuine disputes of material fact. *Id.* (citing *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1181 (10th Cir. 2019)). The "traditional summary-judgment standard of review precludes the [petitioners] from resting on conclusory statements because such statements do not suffice to create a genuine issue of material fact." *Id.* (internal quotations omitted).

### A. *Standing Akimbo LLC v. United States*, 955 F.3d 1146 (10th Cir. 2020)

The vast majority of petitioners' arguments are foreclosed by the Tenth Circuit's

ruling in *Standing Akimbo LLC v. United States*, 955 F.3d 1146 (10th Cir. 2020) [hereinafter *Standing Akimbo II*].  In *Standing Akimbo II*, 955 F.3d at 1151, the Tenth Circuit considered an appeal of the district court's denial of the petition to quash summonses filed by Standing Akimbo LLC and its owners for records relating to tax years 2014-2015.

Revenue Agent Pringle issued summonses to MED in relation to 2014-15 tax liabilities for Standing Akimbo LLC and its owners.  Docket No. 12-1 at 2-3, ¶ 7.  Standing Akimbo LLC and its owners filed a petition to quash the summonses.  *Standing Akimbo, LLC v. United States*, No. 17-mc-00169-WJM-KLM, 2018 WL 6791104, at *1 (D. Colo. Aug. 6, 2018) [hereinafter *Standing Akimbo I*].  The magistrate judge recommended denying the petition to quash, *id.*, the district court adopted the recommendation, 2018 WL 6791071, at *1 (D. Colo. Dec. 10, 2018), and the Tenth Circuit affirmed.  *Standing Akimbo II*, 955 F.3d 1146.

For the 2016 tax year, Standing Akimbo LLC changed its EIN and became Standing Akimbo Inc., one of the petitioners in this case.  *See* Docket No. 12-1 at 2 n.1.  While *Standing Akimbo I* was pending, it became apparent that similar issues to Standing Akimbo LLC's 2014-15 tax liability existed with respect to Standing Akimbo Inc.'s 2016 tax liability.  Docket No. 12-1 at 3, ¶ 8.  Accordingly, the IRS expanded its examination of Standing Akimbo to 2016 and its owners at that time.  *Id.*  As part of this examination, Revenue Agent Pringle issued summonses to MED for information related to Standing Akimbo Inc. and its owners.  *Id.* at 4-5, ¶¶ 14, 22.  Revenue Agent Pringle stated that the information in these summonses "may be relevant to determine the

correctness of" the federal tax returns and liabilities of Standing Akimbo and its owners. *Id.* at 5-6, ¶¶ 19, 27.

The summonses Revenue Agent Pringle issued in this case for information on Standing Akimbo Inc. and its owners are identical to the summonses he issued for information regarding Standing Akimbo LLC and its owners in *Standing Akimbo I*, except for the year and name of the entity and owners. *Compare Standing Akimbo I*, No. 17-mc-00169-WJM-KLM, Docket No. 12-2 at 20, 24-26, *with* No. 18-mc-00178-PAB, Docket No. 12-2 at 6, 10-11. Because the summonses are the same, the Tenth Circuit's ruling is largely dispositive of the arguments petitioners raise in this case, and the Court will not provide detailed analysis of issues that are plainly foreclosed by *Standing Akimbo II*.[4]

### B. *Powell* Factors

#### 1. *Legitimate Purpose*

The IRS provides a declaration from Revenue Agent Pringle stating that he served the summonses in relation to an "examination of the federal tax liabilities" of Standing Akimbo Inc. for the 2016 tax year. Docket No. 12-1 at 2, ¶ 4. Because Standing Akimbo elected to be treated as a pass-through entity for tax purposes, the audit could affect Standing Akimbo's owners' income taxes, and thus the IRS assigned

---

[4] In *Standing Akimbo I,* the magistrate judge focused only on the summons issued to MED regarding Standing Akimbo LLC's records, and not on the summonses issued to MED regarding the owners' licenses. *See* 2018 WL 6791104, at *2. However, in *Standing Akimbo II*, the court noted this error and nevertheless affirmed the denial of the petition to quash. *Standing Akimbo II*, 955 F.3d at 1166 n.18 ("The magistrate judge appears to have misunderstood the Taxpayers' argument and addressed only the Standing Akimbo summons. We need not remand, however, because we may affirm on any basis adequately supported by the record.").

6

Revenue Agent Pringle also to examine the personal tax returns of the owners. *Id.* Revenue Agent Pringle stated that Standing Akimbo purports to sell marijuana and is located in Denver, Colorado. *Id.*, ¶ 5. The IRS argues that its investigation of whether petitioners' income derives from sale of marijuana is a legitimate purpose in light of the bar on deductions and credits for businesses trafficking in controlled substances under Internal Revenue Code § 280E. Docket No. 12 at 9-10.

Petitioners argue that the summonses do not have a legitimate purpose because Congress did not empower the IRS to investigate violations of federal criminal drug laws. Docket No. 6 at 18. Petitioners state that

> the purpose of these summonses is not to determine income or expenses, but to determine whether Petitioners have violated the CSA in order to apply Section 280E. However, Section 280E contains no language authorizing the IRS to investigate or administratively determine that a taxpayer is unlawfully trafficking in a controlled substance.

*Id.* at 19. Petitioners further argue that the government has read the case law incorrectly to give the IRS authority to administratively investigate and determine violations of federal criminal drug laws. *Id.* at 20.

Petitioners, however, have not shown that a criminal investigation is pending or that the summonses are connected to a criminal investigation.[5] *See Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1121 (10th Cir. 2017) ("But § 280E has no requirement that the Department of Justice conduct a criminal investigation or obtain a

---

[5] Petitioners provide the statements of the United States Attorney for the District of Colorado wherein he indicated that the United States Attorney's Office would soon (as of September 2018) be filing criminal charges against Colorado marijuana dispensaries. Docket No. 6 at 5-6. However, petitioners provide no information that these investigations are directed at them or that the summonses are connected to the investigations. *See id.*

7

conviction before § 280E applies." (citing *Alpenglow Botanicals, LLC v. United States*, No. 16-cv-00258-RM-CBS, 2016 WL 7856477, at *4 (D. Colo. Dec. 1, 2016))). Moreover, in *Standing Akimbo II*, 955 F.3d at 1157, the Tenth Circuit rejected this same argument and stated that "even if the IRS had in fact issued the summonses to investigate federal drug crimes . . . the IRS could still do so as part of determining § 280E's applicability." While the IRS may lack authority to criminally prosecute petitioners for trafficking in controlled substances, the IRS has authority to make determinations about whether deductions are allowable under the Internal Revenue Code, including § 280E. Revenue Agent Pringle's affidavit establishes that the summonses are related to an investigation of petitioners' tax liabilities, something within the IRS's authority. *See* Docket No. 12-1 at 5-6, ¶¶ 19, 27.

### 2. Relevance to Investigation

Petitioners argue that the summonses are not relevant to a legitimate purpose because the IRS does not have the authority to investigate whether a taxpayer violated the Controlled Substances Act, and to give the IRS this power would create a "constitutional difficulty." Docket No. 6 at 21. The Court rejects both of these arguments in other portions of this Order. *See supra* Section II.B.1; *infra* Section II.C.4.a.

The IRS argues that the information it seeks is relevant to its investigation because it will "shed light on [petitioners'] correct income by substantiating, or contradicting, sales and inventory figures." Docket No. 12 at 8. Revenue Agent Pringle's declaration indicates that the information the MED summons seeks "can

establish whether a marijuana business properly reported its gross receipts and allowed deductions for cost of goods sold." Docket No. 12-1 at 4, ¶ 12. "The IRS has authority to summon information 'of even *potential* relevance to an ongoing investigation.'" *Standing Akimbo II*, 955 F.3d at 1160 (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984)). The METRC data may also be relevant to the IRS's investigation in other ways, such as providing inventory figures and helping Revenue Agent Pringle verify the accuracy of internal books and records. *See id.* The Court finds that petitioners have failed to create a genuine dispute of material fact here, and the IRS has satisfied the second *Powell* factor.

### 3. The IRS Does Not Already Have the Information Sought

Revenue Agent Pringle states that the IRS did not possess the information sought when he requested the summons and that MED has not produced the requested information. Docket No. 12-1 at 5-6, ¶¶ 17-18, 25-26. As petitioners do not challenge the government's prima facie showing on this factor, the Court finds that the government has shown that the IRS does not already have the information sought. "The taxpayers bear the burden of providing facts to contest the IRS's prima facie showing under *Powell*." *Standing Akimbo II*, 955 F.3d at 1160. Here, petitioners have failed to demonstrate a genuine dispute of material fact regarding this issue.

### 4. Required Administrative Steps

Petitioners do not challenge the IRS's completion of administrative steps. Therefore, the Court finds that this element is satisfied and, accordingly, that the IRS has met its burden under *Powell* to show a prima facie case.

### C. Lack of Good Faith or Abuse of Process

"Once the IRS [makes a prima facie case], a 'heavy' burden falls on the taxpayer 'to factually refute the *Powell* showing or factually support an affirmative defense.'" *Speidell*, 978 F.3d at 738 (quoting *Balanced Fin. Mgmt.*, 769 F.2d at 1443). The Tenth Circuit has acknowledged that this framework may not comport with the Supreme Court's holding in *United States v. Clarke*, 573 U.S. 248 (2014), and summary judgment standards, but found that "any tension created by *Clarke* is indirect." *Speidell*, 978 F.3d at 739 ("*Clarke* does not obviously contradict or invalidate *Balanced Financial Management*."). The Court will therefore consider petitioners' affirmative defenses in the context of the summary judgment standard and without requiring petitioners to satisfy a "heavy" burden.

Petitioners argue that, notwithstanding the IRS's prima facie case, the summonses should not be enforced because (1) the IRS has not acted in good faith in issuing the summonses; (2) the summonses are unreasonable and unenforceable because they are overbroad; (3) the summonses force MED to prepare documents that do not exist; and (4) the summonses would violate petitioners' Fourth and Fifth Amendment rights. Docket No. 6 at 8-16, 21, 23-30. None of these arguments has merit.

#### *1. Good Faith*

Petitioners argue that "[t]he IRS is not acting in good faith by alleging and investigating by means of summons inherently criminal activity . . . that may be shared with law enforcement" despite the fact that the IRS "fail[s] to officially refer the matters

10

to the Department of Justice." *Id*. at 22. As noted earlier, the IRS can enforce § 280E absent a criminal investigation or prosecution. *See Green Sol. Retail, Inc.*, 855 F.3d at 1121; *Alpenglow Botanicals*, 894 F.3d at 1197. Thus, there is no basis to conclude that the IRS is not acting in good faith. *See Villarreal v. United States*, 524 F. App'x 419, 423 (10th Cir. 2013) (unpublished) (rejecting as conclusory a taxpayer's claim that the IRS's subpoena of bank records was a "harassment campaign").

### 2. Overbreadth

Petitioners make two overbreadth arguments, both of which fail. The first is that the MED reports sought are reports of plant tracking, not financial transactions, and the IRS does not explain why it needs non-taxable transaction information. Docket No. 6 at 18. Revenue Agent Pringle states that accounting for marijuana plants and products "can establish whether a marijuana business properly reported its gross receipts and allowed deductions for cost of goods sold." Docket No. 12-1 at 4, ¶ 12. In *Standing Akimbo II*, 955 F.3d at 1159, the court found that this was sufficient to show that the summons information would be relevant to the investigation of tax liability. The court later rejected the petitioners' overbreadth argument because "*Powell* does not require that the IRS explain why it seeks information beyond showing its potential relevance to a legitimate purpose." *Id*. at 1166. Accordingly, petitioners' argument fails here.

Petitioners next claim that the MED summonses are overbroad because they constitutes a "fishing expedition" of the records of third parties and "transfer reports." Docket No. 6 at 17, 28-30 (quoting *United States v. Coopers & Lybrand*, 550 F.2d 615, 619-20 (10th Cir. 1977)). Petitioners allege that the MED summons is actually a "John

11

Doe" summons pursuant to 26 U.S.C. § 7609(f) and that the IRS has not shown that the summons is warranted under the statutory factors. *Id*. The Court finds these arguments misplaced. "A summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the ends sought." *Coopers & Lybrand*, 550 F.2d at 621. However, § 7609(f) "only applies when the summons does not identify the person with respect to whose liability the summons is issued." *See Rifle Remedies, LLC v. United States*, No. 17-mc-00062-RM, 2017 WL 6021421 at *3 (D. Colo. Oct. 26, 2017). The Court finds that the MED summons does not constitute a fishing expedition, as the IRS has shown that the information sought is proportionate to the ends. *See Coopers & Lybrand*, 550 F.2d at 621. Therefore, petitioners' overbreadth argument fails.

### *3. Creation of Documents*

Next, petitioners contend that the MED summonses would force the MED to "create documents," which is beyond the summoning power of the IRS. Docket No. 6 at 14-16. As noted above, the summonses are identical to the ones in *Standing Akimbo II* except for the years and entity/owners at issue. The petitioners raised this argument in *Standing Akimbo II* and the court rejected it because the petitioners had not provided any evidence that the summonses forced MED to create documents. 955 F.3d at 1163. The same analysis applies here. Petitioners have argued that there is no evidence the documents requested existed on the date of the issuance of the summons, Docket No. 6 at 15, but this is insufficient. *Standing Akimbo II*, 955 F.3d at 1163. ("To proceed with this affirmative defense, the Taxpayers must provide evidence that the summons forces

the [MED] to create documents."). "If the [MED] does not have the requested reports, then by the IRS's guidelines the [MED] need not create or produce them. Nothing requires the [MED] to create the records, and the summons does not purport to say otherwise." *Id.* at 1164. Therefore, the Court finds that there is no genuine dispute of material fact as to this issue.[6]

### 4. Constitutional Issues

#### a. Constitutionality of § 280E

Petitioners argue that, because § 280E gives the IRS the power to investigate non-tax crimes for tax administration purposes, this unchecked power renders § 280E unconstitutional and any investigation pursuant to § 280E is for an improper purpose. Docket No. 6 at 8. Citing the *Marchetti v. United States*, 390 U.S. 39 (1968), line of cases, petitioners argue that it violates the Fourth and Fifth Amendment to compel and then share incriminating information for tax administration purposes. *Id.* at 8-13.

*Standing Akimbo II* rejected a similar argument:

the tax code, and not a criminal statute, prescribes the IRS's enforcement of § 280E. Here, the IRS sought the information to determine the Taxpayers' tax liabilities.

---

[6] Petitioners argue that requiring MED to produce the entire raw database as an alternative to creating the requested documents would be overbroad. Docket No. 6 at 16. This appears to be in reference to *Standing Akimbo I*, 2018 WL 6791104, at *6, where the magistrate judge stated that, "it is true that the IRS cannot force MED to create documents, but this does not mean that enforcing the Summons would constitute an abuse of the Court's process or that the IRS lacked institutional good faith, especially given that MED must still produce all documents and raw data that it does possess." In *Standing Akimbo II*, 955 F.3d at 1164, the court stated, "[i]f the Taxpayers are arguing that the district court extended the summons to reach the entire METRC database, this argument misconstrues the district court's language and also fails." Accordingly, the Court rejects this argument.

>The Taxpayers also proffer no evidence that the IRS's investigation "is part of a larger criminal investigation," apart from alleging that the IRS has refused to grant them immunity from any criminal prosecution. Appellants' Opening Br. at 25. But this does not refute Agent Pringle's statement that the IRS has not referred the case to the DOJ. The Taxpayers have offered no evidence that the government is criminally investigating them, let alone that the IRS is involved. See [*United States v.*] *LaSalle*, 437 U.S. [298,] 311-12 [(1978)] ("The preceding discussion suggests why the primary limitation on the use of a summons occurs upon the recommendation of criminal prosecution to the [DOJ]. Only at that point do the criminal and civil aspects of a tax fraud case begin to diverge." (citations omitted)). In *LaSalle*, the Supreme Court reiterated its previous conclusion "that Congress had authorized the use of summonses in investigating potentially criminal conduct." *Id*. at 307 (citation omitted). So long as the IRS has not referred the case to the DOJ and has issued the summonses in good faith as defined by the *Powell* factors as here, the summonses are enforceable notwithstanding the possibility of later referral to the DOJ. See *id*. at 307, 313-14.
>
>*Marchetti* does not change this result or remove the IRS's authority to issue summonses under § 7602 when investigating potential § 280E violations. The Taxpayers rely on *Marchetti* to assert that if the IRS is using the information summoned to investigate federal drug crimes, the summonses would be "outside of [the] normal regulatory environment." Appellants' Opening Br. at 25. But *Marchetti* does not stand for that proposition, and the IRS's investigating drug activity within § 280E is a proper purpose. *See Alpenglow*, 894 F.3d at 1197; *Green Sol. Retail*, 855 F.3d at 1121. Further, in *Alpenglow* we distinguished *Marchetti* and its related cases from the IRS's investigations under § 280E. *See Alpenglow*, 894 F.3d at 1197. That analysis holds true here. The *Marchetti* line of cases is inapposite: those cases involve the invocation of a Fifth Amendment privilege to overcome IRS regulations requiring a taxpayer to disclose information carrying a real risk of self-incrimination. *See id*.; *see also Feinberg* [*v. Comm'r*], 916 F.3d [1330,] 1336 [(10th Cir. 2019)] ("The petitioners in those cases, however, were prosecuted for failing to comply with a statute compelling them to provide self-incriminating information, and the Court determined the Fifth Amendment privilege provided a complete defense to that failure." (citations omitted)).

*Standing Akimbo II*, 955 F.3d at 1162-63 (footnotes omitted).[7]  Petitioners argue that,

---

[7] While *Standing Akimbo II*, 955 F.3d at 1163, stated that the petitioners had not raised a Fifth Amendment challenge, and the petitioners in this case do invoke the Fifth

14

because § 280E allows the IRS to investigate violations of federal criminal drug law and does not prohibit the sharing of the incriminating information with law enforcement, § 280E is unconstitutional. Docket No. 6 at 13. Just as in *Standing Akimbo II,* petitioners have not put forward any evidence that the government is criminally investigating them or that the IRS is involved. Accordingly, under *Standing Akimbo II*, petitioners' arguments regarding the unconstitutionality of § 280E fail.

### b. Fifth Amendment

Petitioners argue that the IRS cannot investigate non-tax crimes without granting them immunity. Docket No. 6 at 22-23. In response, the government contends that: (1) Standing Akimbo, as a corporate entity, has no Fifth Amendment privileges; (2) § 280E, as it governs voluntary deductions, does not compel taxpayers to disclose any information; (3) taxpayers do not have Fifth Amendment rights in records voluntarily provided to a third party; and (4) petitioners do not identify a "genuine hazard" of self-incrimination. Docket No. 12 at 11-16.

"The Fifth Amendment protects against compelled self-incrimination, not the disclosure of private information." *Fisher v. United States*, 425 U.S. 391, 401 (1976) (quoting *United States v. Nobles*, 422 U.S. 225, 233 n.7 (1975)) (internal quotation marks omitted). In *Standing Akimbo II,* 955 F.3d at 1167, the Tenth Circuit rejected the petitioners' attempt to claim a Fifth Amendment privilege. The dispensary sought to quash a summons from the IRS to MED by claiming that the individual at MED who disclosed the records to the IRS would violate a Colorado law making METRC data

---

Amendment, Docket No. 6 at 22-23, that does not change the result. The Court rejects petitioners' Fifth Amendment argument in Section II.C.4.b.

15

confidential. *Id.* The Court rejected this argument, noting that "because the Enforcement Division – a third party – holds the information, [] the Taxpayers have no Fifth Amendment interests in it." *Id.* at 1168. The Tenth Circuit reaffirmed this principle in *Speidell*, 978 F.3d at 744-45, citing *Standing Akimbo* for the proposition that, because a third party holds the information sought, any Fifth Amendment interest of the taxpayer was removed.

The summonses request information held by MED. *See* Docket No. 12-1 at 4-6, ¶¶ 14, 22. Therefore, petitioners do not have a Fifth Amendment privilege because the information is in the hands of a third party. *See Speidell*, 978 F.3d at 744-45. The Court concludes that there is no requirement that the IRS provide a grant of absolute immunity before issuing a summons to third parties because taxpayers do not have a Fifth Amendment privilege with respect to that information.[8]

### c. Fourth Amendment

Petitioners argue that they have a reasonable expectation of privacy in the information they provide to MED, and therefore compelling its disclosure would violate

---

[8] Although petitioners' lack of a Fifth Amendment privilege with regard to records held by third parties is dispositive of this issue, the Court notes that petitioners' argument that § 280E compels disclosure of information is not persuasive. As the Tenth Circuit recently noted, the tax scheme does not require persons to claim deductions on their tax returns. *See Green Solution Retail, Inc.*, 855 F.3d at 1121 ("Deductions . . . are not a matter of right. Neither do they turn upon equitable considerations. They are a matter of legislative grace.") (quoting *United States v. Akin*, 248 F.2d 742, 743 (10th Cir. 1957)). It was petitioners' choice to take deductions under § 280E on their tax returns; any investigative action taken by the IRS in response flows from petitioners' voluntary decision. *See also Alpenglow Botanicals*, 2016 WL 7856477 at *6 (concluding that, because the IRS obtained information to make a tax-based determination rather than criminal wrongdoing, petitioners failed to allege a plausible Fifth Amendment claim).

the Fourth Amendment unless a warrant is issued.  Docket No. 6 at 23-27.  Petitioners rely on *Carpenter v. United States*, 138 S. Ct. 2206 (2018), for the proposition that they have a reasonable expectation of privacy in the information provided to MED.  *Id.* at 25-26.  Petitioners also argue that they do not provide the data voluntarily and, because Colorado criminalizes the disclosure of METRC records, they have a reasonable expectation of privacy in them.  *Id.* at *26.*

In *Standing Akimbo II*, 955 F.3d at 1164, the court rejected these arguments and held that "the Taxpayers have no reasonable expectation of privacy in the METRC data collected on their business."  The court found that *Carpenter* did not apply to the petitioners because the data collected by MED "differ[ed] markedly" from the data at issue in *Carpenter*.  *Id.* at 1165.  The court also found that the Colorado statute at issue did not preclude sharing METRC data with the IRS, but even if it did, the Supremacy Clause would preempt it.  *Id.*  Additionally, the Court rejected the argument that the information provided to MED was involuntary, Docket No. 6 at 26, stating that taxpayers voluntarily chose to operate a marijuana business under Colorado law and thus "agreed to provide certain information to the [MED]."  *Standing Akimbo II*, 955 F.3d at 1165.  Accordingly, the IRS does not – as petitioners contend – need a warrant and a finding of probable cause to issue a summons for the METRC data.  *See* Docket No. 6 at 23-28.

If a taxpayer cannot "cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing" because holding such a hearing "would be a waste of judicial time

and resources." *Balanced Fin. Mgmt.*, 769 F.2d at 1444. Because petitioners have not presented factual support for their claims that the IRS is not acting in good faith or is abusing the process, the Court finds that petitioners have not raised a proper affirmative defense. Given that the IRS has demonstrated it is entitled to enforce the summonses and petitioners have failed to show a material issue of disputed fact, petitioners' petition to quash the summons will be dismissed.

### D.  Supplemental Authority

On July 20, 2021, petitioners filed a submission of additional authority. Docket No. 27. The supplemental authority is a statement of Justice Thomas accompanying the denial of the petition for a writ of certiorari of the Tenth Circuit's opinion in *Standing Akimbo II.* Docket No. 27-1. This statement discussed *Gonzales v. Raich*, 545 U.S. 1 (2005), and concludes that "[a] prohibition on intrastate use or cultivation of marijuana may no longer be necessary *or* proper to support the Federal Government's piecemeal approach." Docket No. 27-1 at 1, 5. Petitioners argue that this statement shows that the summonses are not being issued for a legitimate purpose as required by *Powell.* Docket No. 27 at 3-4. On July 28, 2021, petitioners filed a second submission of additional authority, which included a petition for rehearing filed with the Supreme Court and a statement made by Judge Lucero during the January 22, 2019 oral argument for *Feinberg*, 916 F.3d 1330. Docket Nos. 28-1, 28-2.

On August 6, 2021, the government moved to strike these two filing because (1) the petitioners' submissions violate the Local Rules and this Court's Practice Standards; and (2) the submissions do not identify any new authority with any effect on this case.

Docket No. 29 at 1. On August 27, 2021, petitioners filed a response to the motion to strike, arguing that the government's motion should be denied because (1) the government failed to confer before filing it; (2) the supplemental authority are new points of law, not fact, and thus do not need to amend the pleadings; (3) any failure to file a motion for leave is mooted by the contemporaneous filing of such a motion; and (4) "[n]either the Tenth Circuit decision in *Standing Akimbo I[I]*, nor the Supreme Court decision or *Gonzales v. Raich*, control over Justice Thomas' statement that the current federal regime regulating intrastate cannabis is no longer necessary or proper." Docket No. 30 at 1-2. On the same day, petitioners filed a motion for leave to submit the additional authority in Docket Nos. 27 and 28. Docket No. 31.

This flurry of filings has no bearing on the Court's analysis. Petitioners seek to advance a new argument, based on a non-precedential statement accompanying a denial of a writ of certiorari. *See* Docket No. 27. The outcome of this case is controlled by recent Tenth Circuit precedent. The Court declines to consider a new argument raised for the first time in supplemental authority based on no change in precedent. *See Hooks v. Ward*, 184 F.3d 1206, 1233 n.25 (10th Cir. 1999) ("[W]e do not accept a new argument by way of notice of supplemental authority notices, and arguments not raised in duly filed briefs are deemed waived."). Accordingly, the Court will deny petitioners' motion for leave to submit additional authority [Docket No. 31] and deny as moot the government's motion to strike Docket Nos. 27 and 28 [Docket No. 29].

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the United States' Motion to Dismiss Amended Petition and Enforce Summonses [Docket No. 12] is **GRANTED**.  The summonses issued to the Colorado Marijuana Enforcement Division, are **ENFORCED** pursuant to 26 U.S.C. § 7604.  It is further

**ORDERED** that petitioners' Amended Petition to Quash Summonses [Docket No. 6] is **DISMISSED**.  It is further

**ORDERED** that Petitioners' Motion for Leave to File Its Additional Authority Pursuant to the Court's Practice Standards [Docket No. 31] is **DENIED**.  It is further

**ORDERED** that the United States' Motion to Strike Petitioners' Submission of Additional Authority [Docket No. 29] is **DENIED as moot**.  It is further

**ORDERED** that this case is closed.

DATED September 2, 2021.

                                            BY THE COURT:

                                            PHILIP A. BRIMMER
                                            Chief United States District Judge